563 F.2d 577
 2 Fed. R. Evid. Serv. 1081
 In re GRAND JURY PROCEEDINGS, Subpoenas Duces Tecum "A",
"B", "C", "D", and "E", and Subpoenas of Helen
Sills and Nancy Doyle.
Appeal of Henry J. CIANFRANI, Intervenor in 77-1970, 77-2051/2/3.
Appeal of Thomas J. KALMAN, in No. 77-1971.
 Nos. 77-1970, 77-1971, 77-2051, 77-2052 and 77-2053.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 23, 1977.
Decided Sept. 7, 1977.
As Amended Nov. 8, 1977.
 
 David W. Marston, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Gregory T. Magarity, Frank H. Sherman, Asst. U. S. Attys., Philadelphia, Pa., for appellee, U. S.
 Nicholas J. Nastasi, Philadelphia, Pa., for Henry J. Cianfrani, appellant in 77-1970 and 77-2051/2/3.
 John Rogers Carroll, Thomas Colas Carroll, Philadelphia, Pa., for Thomas J. Kalman, appellant in 77-1971.
 Before SEITZ, Chief Judge, and GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The search for truth in criminal proceedings and the need for independence of state legislators clash in this appeal stemming from a grand jury investigation. We conclude that the Speech or Debate Clause of the United States Constitution does not shield a state legislator in a federal criminal action, but a limited evidentiary privilege grounded in the common law history of the Clause does exist. Accordingly, we affirm a district court ruling requiring the production of legislative payroll records, but excluding legislative actions as a subject of inquiry before the grand jury.
 
 
 2
 A federal grand jury in the Eastern District of Pennsylvania, investigating allegations of mail fraud, racketeering and tax evasion, issued subpoenas duces tecum to Henry Cianfrani, a Pennsylvania state senator; Thomas J. Kalman, Chief Clerk of the Pennsylvania Senate; the executive director of the Senate Majority Appropriations Committee; the Committee auditors; payroll clerk; and two aides to the Senator or the Committee. The subpoenas directed the production of documents of the Senate Majority Appropriations Committee, including:
 
 
 3
 "(1) The Committee budget for each year, including the breakdown of expenditures.
 
 
 4
 (2) All audits, formal or informal, performed on the Committee.
 
 
 5
 (3) All payroll records, including but not limited to a list by name and address of employees or individuals paid by the committee for services whether presently working for the Committee or not; cancelled checks, check warrant numbers, time sheets, personnel files, promotion records, service contracts, payroll disbursement journals, personnel applications and correspondence, payroll checking accounts, a list of authorized payroll and bank signatures, all forms filed with federal or state governments on behalf of employees, including income tax, pension and workman's compensation forms, and reconciliation statements.
 
 
 6
 (4) Expense account records, including but not limited to vouchers, invoices, expense account reports.
 
 
 7
 (5) All nonpayroll committee financial records including but not limited to ledgers, ledger cards, journals including cash disbursement journals, invoices, purchase orders, vouchers, contracts, accounts payable, check stub registers, cancelled checks, check warrant numbers, petty cash book, petty cash vouchers, bank statements, duplicate deposit tickets, bank signature cards, balance sheets, financial statements, etc.
 
 
 8
 (6) All correspondence, memoranda, minutes of committee, executive or board meetings."
 
 
 9
 The district court permitted Senator Cianfrani to intervene in the government's proceeding to enforce the subpoenas served on the prospective witnesses other than himself. Mr. Kalman, the Chief Clerk of the Senate, was permitted to intervene in connection with the subpoena served upon Senator Cianfrani.
 
 
 10
 The witnesses resisted production of the records, invoking the Speech or Debate Clauses of the United States and Pennsylvania Constitutions, the Ninth, Tenth and Eleventh Amendments of the United States Constitution, and § 25 of the Rules of the Pennsylvania Senate, as well as a principle of confidentiality and secrecy of documents alleged to be due a state legislator. The district court determined that the Speech or Debate Clause of the United States Constitution was not applicable, but held that state legislators are entitled to a "common law speech or debate" privilege in federal criminal matters. At the court's suggestion, the government amended its subpoenas to order production of:"(F)or the years beginning January 1, 1970 up to and including the present . . . :
 
 
 11
 1. All payroll records of persons employed by the Committee, including but not limited to a list by name and address of employees or individuals paid by the Committee for services, whether presently working for the Committee or not, cancelled checks, check warrant numbers, time sheets, personnel files, promotion records, service contracts, payroll disbursement journals, payroll applications correspondence, payroll checking accounts, a list of authorized payroll and bank signatures, all forms filed with federal or state governments on behalf of employees, including income tax, pension forms, annual reconciliation statements. The above do not include payroll records of the Senators on the Committee nor members of their staff who do not work for the Committee.
 
 
 12
 2. All nonpayroll Committee financial records, including but not limited to ledgers, ledger cards, cash disbursement journals, other journals, invoices, purchase orders, vouchers, contracts, accounts payable, check stub registers, cancelled checks, check warrant numbers, petty cash vouchers, bank statements, balance sheets, financial statements, etc. The above do not include the financial records of any member Senator on the Committee, except where those financial records are also records of the Committee."
 
 
 13
 The major difference between the original and amended subpoenas is that payroll and financial records of the Senators on the Committee and their staff members who did not work on the Committee were specifically excluded from the revised versions. The subpoenas were also modified to delete requests for Committee correspondence, memoranda, minutes of Committee, executive or board meetings, and for information relating to the Committee's yearly budgets and audits performed on the Committee. In addition, the court ordered that:
 
 
 14
 ". . . no witness before the Federal Grand Jury may be questioned about acts of any legislator or aide as are an integral part of the deliberative or communicative processes by which the legislators participate in Committee or Senate proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of the State Senate, or about records relating to such acts.
 
 
 15
 "Nor shall any witness be questioned concerning the motives and purposes behind any legislator's legislative acts as defined above."
 
 
 16
 Senator Cianfrani and Chief Clerk Kalman appeal in their capacity as intervenors only.
 
 
 17
 As a general rule, an appeal will not lie from a denial of a claim of privilege unless the witness has been held in contempt for refusal to testify before the grand jury. United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). Where an intervention has been permitted, however, the matter is presented in a different posture. Reasoning pragmatically that a witness will not usually undergo the penalties of contempt in order to preserve someone else's privilege, the courts permit appeal by an intervenor without the necessity of a sentence for contempt. See United States v. Nixon, 418 U.S. 683, 691, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918); In the Matter of Grand Jury Impaneled January 21, 1975, 541 F.2d 373 (3d Cir. 1976). See also United States v. Doe, 455 F.2d 753, 756, aff'd in part, vacated in part on other grounds sub nom. Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). We conclude that the orders are appealable and we have jurisdiction.
 
 
 18
 At the outset, we consider and reject the argument that the Speech or Debate Clause of the Constitution applies to a federal criminal prosecution of a state legislator. Article 1, § 6 of the United States Constitution provides that ". . . for any Speech or Debate in either House, they (the senators and representatives) shall not be questioned at any other Place." The Speech or Debate Clause was approved at the Constitutional Convention without discussion or opposition. It grew out of the English Bill of Rights of 1689 and the struggle for supremacy between Parliament and the Crown which was particularly intense during the sixteenth and seventeenth centuries. Justice Harlan reviewed the historical development of the immunity in United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1965), and a further exposition may be found in Cella, The Doctrine of Legislative Privilege of Freedom of Speech or Debate: Its Past, Present and Future as a Bar to Criminal Prosecution in the Courts, 2 Suffolk L.Rev. 1 (1968). See also Reinstein & Silverglate, Legislative Privilege and the Separation of Powers, 86 Harv.L.Rev. 1113 (1973); Ervin, The Gravel and Brewster Cases: An Assault on Congressional Independence, 59 Va.L.Rev. 175 (1973).
 
 
 19
 The Clause received scant attention from the Supreme Court until recent years. The earliest case was Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1881), where the scope of the Clause was construed in connection with a civil damage suit. In more recent times, the Court delineated the parameters of the immunity as it applied in the field of criminal law. United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); Gravel v. United States, supra; and United States v. Johnson, supra. In all of those cases, the immunity under discussion was that of a member of the United States Congress, not a state legislator. The Supreme Court has not yet passed upon application of the Clause to a state legislator. We find it significant that the constitutional phraseology is limited to members of Congress, and we conclude that the immunity is granted only to them and to certain of their aides. Eastland v. United States Servicemen's Fund, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975); Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); Gravel v. United States, supra; Kilbourn v. Thompson, supra. It does not apply to members of a state legislature.
 
 
 20
 In Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Court held that a state legislator did enjoy an immunity from damage liability in a suit brought under the Civil Rights Act, now codified at42 U.S.C. §§ 1983 and 1985. Although the opinion discussed the Speech or Debate Clause in both Federal and state Constitutions at some length, the Court's holding was narrow that state legislators are immune from damage awards in civil suits brought under the Civil Rights Act. The case, therefore, does no more than recognize a kind of official immunity from civil damage suits similar to that granted to judges, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and prosecutors, Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and more extensive than that available to executive officers, Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As O'Shea v. Littleton, 414 U.S. 488, 503, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), makes clear, however, official immunity applies only in civil cases. A judicially fashioned doctrine of official immunity does not reach "so far as to immunize criminal conduct proscribed by an Act of Congress," Gravel v. United States, 408 U.S. at 627, 92 S.Ct. at 2628. Tenney v. Brandhove did not apply the Speech or Debate Clause of the United States Constitution to a state legislator as has sometimes been asserted.[1]
 
 
 21
 The Clause is viable in a governmental setting where separation of powers is a significant factor. That consideration does not apply when a state legislator is being prosecuted under a federal criminal statute. Federal power and its exercise within the constitutional grant takes precedence over state activity, including that of its legislature. Thus, in Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966), where controversial speech was within First Amendment protection, the Supreme Court held that a state legislature could not refuse to seat one of its members because of objections to his views. In an analogous situation involving a member of the United States House of Representatives, the Supreme Court found it unnecessary to determine whether the Speech or Debate Clause would foreclose an action against members of Congress themselves. Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). No such reservation was made in the Bond case, although certain members of the legislature were parties defendant. In Eastland v. United States Servicemen's Fund, supra, the Court refused an injunction against a Senate subcommittee accused of violating an organization's First Amendment rights. The Speech or Debate Clause was found to be applicable. Cf. Jordan v. Hutcheson, 323 F.2d 597 (4th Cir. 1963), where a different result was reached in a suit against a state legislative committee. See also Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960).
 
 
 22
 Appellants contend that they are entitled to invoke the state constitution's Speech or Debate Clause[2] on the ground that it had been adopted as part of an earlier Pennsylvania Constitution in 1790, before passage of the Ninth, Tenth and Eleventh Amendments to the United States Constitution.[3]
 
 
 23
 We find this argument unpersuasive because the criminal statutes forming the basis for the grand jury investigation were enacted pursuant to the grant of power to Congress under the Constitution and the Sixteenth Amendment. Insofar as the appellants' arguments imply that Congress' authority to legislate in this field was restricted, we must reject them. We perceive no limitation on the grant of powers to require immunization of legislative members from enforcement of federal criminal statutes. There is no tradition in this country to grant a broad immunity from criminal prosecution to members of Congress, United States v. Brewster, 408 U.S. at 522 n.16, 92 S.Ct. 2531; see Yale Note, supra, and we find no justification for a contrary policy applicable to state legislators. The plurality opinion in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), points out that congressional power to legislate under the Commerce Clause has some limitations when it impinges upon a state's exercise of its traditional governmental functions. The anti-racketeering criminal statutes may rest upon a Commerce Clause foundation, but we do not perceive a substantial interference with state functions in the context of this case. Nor indeed would National League of Cities v. Usery, supra, apply to the charges arising under the mail fraud or tax evasion allegations.
 
 
 24
 That, however, does not end the matter. The district court determined that a federal common law privilege exists and under Federal Rule of Evidence 501 should be enforced as to some of the materials sought by the subpoenas. The district court relied upon a panel decision of the Court of Appeals for the Seventh Circuit in United States v. Craig (I), 528 F.2d 773 (7th Cir. 1976), which found a common law privilege existed in a factual situation quite similar to the one at bar. On rehearing in banc, a majority of the full court disagreed, reasoning that the privilege would be commensurate with official immunity and since it did not extend to criminal liability, there could be no privilege. United States v. Craig (II), 537 F.2d 957 (1976), cert. denied sub nom. Markert v. United States, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976).3a
 
 
 25
 Federal Rule of Evidence 501 provides that a privilege "shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience." This rule applies in criminal as well as civil proceedings. In Craig (I), supra, the court traced the history of federal evidentiary law in criminal cases culminating with the enactment of Rule 501 after spirited congressional action. We agree with the reasoning of the panel majority which found that principles of common law in light of reason and experience dictate the recognition of a federal common law legislative privilege to be applied in federal criminal prosecutions. We are unable to accept the position adopted by the majority of the court in banc in Craig (II), supra.
 
 
 26
 The public policy which led to inclusion of the Speech or Debate Clause in the Constitution is a strong one with deep historical roots. In Tenney v. Brandhove, 341 U.S. at 373, 71 S.Ct. at 786, the Court wrote:
 
 
 27
 "The reason for the privilege is clear. It was well summarized by James Wilson, an influential member of the Committee of Detail which was responsible for the provision in the Federal Constitution. 'In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offence.' II Works of James Wilson (Andrews ed. 1896) 38. See the statement of the reason for the privilege in the Report from the Select Committee on the Official Secrets Acts (House of Commons, 1939) xiv."
 
 
 28
 In the leading case of Coffin v. Coffin, 4 Mass. 1, 27 (1808), the court said:
 
 
 29
 "These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal."
 
 
 30
 Most of the states, including Pennsylvania, have similar speech or debate clauses in their constitutions. Grant of the privilege is founded on unhappy experience in the past and is based on the premise that a legislature will function better in the public interest with the protection than without it. Though it may hamper somewhat prosecution of the few who are guilty of betraying the public trust, the privilege is needed to protect the great majority of legislators who are conscientious in the performance of their duties. The state legislators, while they must yield to federal authority in areas where that government is supreme, nevertheless have extremely important functions to perform. Their work could be substantially hindered by exposing members to litigation arising out of the performance of legislative duties. Recognition of this fact led the Supreme Court to grant official immunity for federal civil suits, Tenney v. Brandhove, supra. That same concern in common law history supports the existence of a privilege for state legislators in federal criminal proceedings. Principles of federal-state comity "a proper respect for state functions," Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), reinforce this conclusion.
 
 
 31
 Yet the privilege is not unlimited. It exists only to the extent necessary for adequate functioning of the state legislative body without, however, shielding criminal conduct which corrupts the governmental process. While the Speech or Debate Clause of the United States Constitution is not applicable in this case, decisions construing its limitations are helpful in determining the scope of the federal common law privilege. In United States v. Brewster, 408 U.S. at 517, 92 S.Ct. 2531, the Court pointed out that the privilege had been abused in the past and that a sweeping reading of the Clause was not desirable. Noting its intended scope, literal language and history, the Court limited the Clause to purely legislative activities. A congressman performs many legitimate and necessary tasks for his constituency which are generally acknowledged as being within the scope of his duties, but they are nonetheless not strictly legislative. The constitutional provision affords protection only for acts which are clearly a part of "the due functioning of the legislative process." United States v. Brewster, 408 U.S. at 513, 92 S.Ct. at 2538. Similarly, while a speech on the floor of the House may be immunized, the same utterance at a political gathering is not. As the Court phrased it:
 
 
 32
 ". . . the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts. So expressed, the privilege is broad enough to insure the historical independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members." 408 U.S. at 525, 92 S.Ct. at 2544.
 
 
 33
 In illustrating the point, the Court said that receiving a bribe is no part of the legislative process or function, although the vote itself, even though induced by a bribe, would be privileged.
 
 
 34
 Restrictions on the Speech or Debate Clause are further illustrated in Davis v. Passman, 544 F.2d 865 (5th Cir. 1977). In that case, a United States Representative invoked the Clause in an attempt to dismiss a sex discrimination suit brought by a female staff member that he had discharged. Citing Gravel, Brewster, and McMillan for the proposition that the Speech or Debate Clause applies only to "legislative" activity, the Court of Appeals for the Fifth Circuit held the Clause to be inapplicable:
 
 
 35
 "A representative's transgressions are not given absolute absolution. The Constitution establishes an immunity for aberrations in a representative's legislative activities, but members of Congress become mere mortals when they operate in more mundane fields." 544 F.2d at 880.
 
 
 36
 In our view similar limitations must be applied to the federal common law privilege. It is the legislative act, legislative speech and motivation of the member which are protected. The privilege is not one of nondisclosure, like that of husband and wife, or lawyer and client, because in most instances the legislative act or utterance is already a matter of public record easily introduced in a court. To accomplish its purpose, the privilege must bar evidence of legislative act or speech; thus, an admission of criminal complicity by a legislator during a debate cannot be introduced into evidence against him. This kind of privilege is not foreign to the common law. For example, a witness' testimony in judicial proceedings generally may not be used as the basis for a libel or slander suit; the contents of an involuntary confession may not be received in evidence in a criminal trial.
 
 
 37
 The privilege is not one of nondisclosure but of nonevidentiary use. This nonevidentiary use privilege permits legislative action, as well as free and unfettered legislative debate, without exposing the legislator to criminal liability. It does not, however, as in Brewster, prevent introduction of evidence of receiving a bribe, though it would bar reference to the legislative act for which the money was received.
 
 
 38
 Moreover, while the privilege extends to certain aides of a legislator, it does so only as to legislative matters and is derivative from that accorded to the legislator, Gravel v. United States, supra. Since the privilege is one of nonevidentiary use rather than nondisclosure, there is no obstacle to preliminary inquiry of the legislative employee to determine the extent of his duties and the nature of the matter alleged to be privileged.
 
 
 39
 The appellants contend that legislative action depends on aides who must be paid for their work and consequently the privilege should be extended to payroll evidence. We do not agree. Such an expansion of the privilege would give it wider coverage than the Speech or Debate Clause and provide more of a safeguard than is necessary to preserve legislative independence and integrity. It would invite abuse, weaken the integrity of the legislature, and unnecessarily hinder criminal law enforcement.
 
 
 40
 We recognize the friction between the ancient maxim that the law is entitled to every man's evidence and the existence of any privilege. Particularly in the criminal field, the search for truth should be hampered as little as possible. In recognizing a privilege analogous to that conferred by the Speech or Debate Clause, the common law should not go beyond the limits of the constitutional immunity. The privilege should be extended only to those who are its intended beneficiaries and only to the extent necessary for the fulfillment of its purpose. Therefore, it should operate as a shield to those whose public duties would be adversely affected by its absence the legislators themselves. It is not an institutional privilege belonging to the legislature itself, but rather is personal in nature. The unlikely prospect of criminal proceedings against a legislature per se are more properly the subject of constitutional rather than merely evidentiary protection.
 
 
 41
 To summarize, we recognize the existence of a personal privilege which may be asserted by a legislator in a federal criminal case to exclude from a criminal proceeding in which he is involved any evidence of his action performed in a strictly legislative capacity, motivations for such action, or utterances in the course of his legislative duties. We do not find the privilege to exist on the part of the legislature as an institution in a similar context.
 
 
 42
 With this standard as a guide, we find that the district court properly ordered the appellants to produce payroll and tax evidence. This material, while tangentially related to the legislative function, is so peripheral as not to be covered by the privilege. The legislative function is separate and distinct from that of compensation of the office and the ministerial work to prepare payrolls, vouchers, and the various tax forms. This clerical work must be performed regardless of the position that any legislator may wish to take on issues of public importance. It is not to be expected that a legislator's vote may be influenced by the fact that his name or that of a committee aide appears on the payroll records of the legislative body or the fact that W-2 forms will be dispatched to the federal government. In this setting, a legislator is entitled to no more protection than any other citizen or public official.
 
 
 43
 The limits of the privilege which we have outlined are somewhat narrower than those perceived by the district court. Consequently, any of the appellants' positions which were not accepted by the district court are a fortiori rejected by this court.[4] Therefore, we will affirm the district court insofar as its rulings were adverse to the appellants. To the extent that the district court's orders are favorable to the appellants, we need not pass upon them since those matters are not before us.
 
 
 44
 The orders of the district court will be affirmed and the mandate will issue forthwith.
 
 
 45
 GIBBONS, Circuit Judge, concurring.
 
 
 46
 I join in the court's judgment affirming the orders appealed from, in those parts of the majority opinion holding that we have appellate jurisdiction, and in those parts which reject the contention that there is speech and debate clause protection against criminal prosecution of a state legislator for a federal crime. State legislators do not, upon assuming their offices, cease to be citizens and residents of the United States. The federal criminal law is as fully applicable to them as to any other resident of the United States. The federal government is a sovereignty, not the mere manifestation of a treaty between independent sovereignties. Between that government and its subjects, their status as legislators of a state cannot, in the absence of federal legislation, immunize them from the sanction of the federal criminal law or from the reach of federal process.
 
 
 47
 I do not join in the majority's dictum that there is some sort of federal common law evidentiary privilege which permits state legislators to decline to testify about legislative acts or speech. That discussion, in my view, is unnecessary to the decision. Moreover it confuses the law of immunity with the law of evidence, confuses different kinds of privileges, and leaves me unconvinced that the recognition of an evidentiary privilege in this instance advances any public policy worthy of consideration.
 
 
 48
 I start with the observation that the scope of the privilege recognized by the district court is not before us because there is no cross-appeal by the government. Thus anything that is said or implied with respect to the relief granted by the district court is dictum. Next, I note that the appellant Cianfrani is an intervenor in No. 77-1970, 77-2051/2/3, and that the appellant Kalman is an intervenor in No. 77-1971. It is only because they are intervenors that we have appellate jurisdiction. Cianfrani is not on this appeal asserting a privilege respecting his testimony. He is asserting the right to prevent testimony or compliance with a subpoena duces tecum by Kalman and others. Kalman is not on this appeal asserting a privilege as to his testimony. He is asserting the right, on behalf of the Pennsylvania Senate, to prevent testimony or compliance with a subpoena duces tecum by Cianfrani and others. The majority says that there is a privilege to "bar evidence of the legislative act or speech" and suggests that such a privilege is necessary to prevent "exposing the legislator to criminal liability" for such act or speech. In Kalman's appeal such a question is not presented at all, since he is not seeking to prevent any legislative act or speech by him. In Cianfrani's case such a question might have been presented in the district court, but it certainly is not presented on this appeal. He contends, and the majority says, that he has "a personal privilege which may be asserted by (him) in a federal criminal case to exclude from a criminal proceeding in which he is involved any evidence (even from third parties) of his legislative actions, motivations for such action, or utterances in the course of his legislative duties." But as the majority acknowledges, the payroll records and non-payroll financial records covered by paragraphs 1 and 2 of the order appealed from (the only parts of the order to which appellants object) fall outside the area of legislative acts or speech. This being the case, there is no need to render an advisory opinion to the effect that a state legislator has a federal common law cause of action to prevent testimony by third parties about his acts or speech in the legislature.
 
 
 49
 Since the majority addresses the point, however, it is appropriate to say why I disassociate myself from the discussion.
 
 
 50
 I am concerned about the scope of the privilege the majority recognizes. Is it applicable only in federal criminal prosecutions, and only when the legislative act or speech would tend to incriminate a member of the legislature? Could the legislator assert the privilege where another defendant sought to introduce evidence of such act or speech defensively? If so, would not its recognition run afoul of the sixth amendment right to compulsory process? If it is available in civil cases, could it be used as an effective means of preventing the successful prosecution of civil rights cases such as Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966), and Jordan v. Hutcheson, 323 F.2d 597 (4th Cir. 1963)? Does it apply not only to members of the state legislature, but also to the myriad municipalities, counties, school boards, and state administrative agencies which exercise, to one extent or another, the Commonwealth's legislative powers? If so, would it not thwart the successful prosecution of civil rights cases such as Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)? Reaching out for the opportunity to create a new category of evidentiary privilege, the scope of which is undefined, and the consequences of which are unknown and unknowable in a case where the pronouncement is completely unnecessary to the decision, seems to me an extreme example of an unnecessary advisory opinion.
 
 
 51
 Moreover I see no significant public or private benefit flowing from the recognition of this new evidentiary privilege. By the majority's hypothesis, we are not dealing with matters of confidentiality such as are involved in the attorney-client, husband-wife, juror, physician-patient, priest-penitent, or state secret privileges. We are dealing with public acts or speech and public records of such acts or speech. Nor are we dealing with immunity from the consequences of such acts or speech for, as the majority acknowledges, Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), affords only a limited immunity from civil actions for money damages an immunity that is recognized at least partly because the availability of criminal sanctions and injunctive relief affords alternative protections. It has been suggested that the threat of a federal criminal prosecution could influence the official acts of a state legislator. See 8 Rut.Cam.L.J. 550, 554 (1977). If the proposed action violates federal law, I see no harm in such an influence. But in any event, once the majority acknowledges that there is no immunity from criminal prosecutions or injunctive relief, any interest of the state legislative process becomes attenuated beyond practical utility. We are dealing with the supposed incremental increase in freedom of legislative expression which comes from the possibility that, although incriminating statements are in the public domain, they cannot be offered in evidence. There is no empirical evidence that any legislator in the real world would, because of the existence of such an evidentiary privilege, be any less free in his utterances. Weighed against this highly speculative benefit to the state legislative process is the certain detriment to federal law enforcement which is the inevitable consequence of every recognition of a privilege to withhold evidence. What is particularly disquieting is that the majority's privilege is even broader than the fifth amendment privilege against self-incrimination in that it permits the suppression of third party testimony about a defendant's perfectly voluntary and public utterances.
 
 
 52
 If the majority intends that the privilege apply in civil actions as well as criminal prosecutions, it has dangerous propensities. Where will the evidence come from the next time a legislator is excluded from the seat to which he was elected for reasons of race, national origin, sex, or the expression of unpopular views? See Bond v. Floyd, supra. Where will the evidence come from the next time a legislative committee acts in such a way as to intimidate and harass persons in the exercise of first amendment or sixth amendment rights? See Jordan v. Hutcheson, supra. Where will the evidence come from when a legislative committee without due process holds someone up to public obloquy? Cf. Jenkins v. McKeithen, supra. If the members of the legislature can, as here, sue to suppress evidence of their misconduct, the case will soon be over.
 
 
 53
 If the majority intends the privilege to apply only in federal criminal prosecutions, then the reason for its existence escapes me entirely. Recently in Matter of Grand Jury Impaneled Jan. 21, 1975, 541 F.2d 373, 377 (3d Cir. 1976), we rejected the contention that the judicial branch of the Commonwealth government could withhold from scrutiny by a federal grand jury records filed with it. In that case there was a clear state interest in confidentiality of the records in questions (contingent fee agreements), and the Commonwealth had a much stronger argument that loss of confidentiality might interfere with the accomplishment of its regulatory purposes in requiring the filing of the records. Here no confidentiality is involved, and the incremental value to the Commonwealth of impeding the government's mail fraud and tax evasion investigations is infinitesimal. If the judicial branch of the Commonwealth has no such evidentiary privilege in federal criminal proceedings, the case for such a legislative branch privilege simply cannot be made out. It is true, of course, that Matter of Grand Jury Impaneled Jan. 21, 1975, supra, required only the production of records, and not judicial testimony as to what took place in court. But judges are not immune from the requirement that they testify as to what went on in their court. See United States v. Caldwell, 25 Fed.Cas. 238 (No. 14708) (CCD Pa.1795) (Patterson, C. J.); State v. Donovan, 129 N.J.L. 478, 30 A.2d 421 (1943); People v. McDermott, 180 Misc. 247, 40 N.Y.S.2d 456 (1943); Woodward v. City of Waterbury, 113 Conn. 457, 465, 155 A. 825, 828-29 (1931); 8 Wigmore on Evidence (McNaughton Rev.) § 2372, at 7458 (1961); contra, Hale v. Wyatt, 78 N.H. 214, 216, 98 A. 379, 381 (1916). Neither reason nor experience suggests to me why legislators should be more favorably treated.
 
 
 54
 The majority opinion of the court in banc in United States v. Craig, 537 F.2d 957 (7th Cir.), cert. denied sub nom., Markert v. United States, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976), was clearly correct in rejecting the contention that there is an evidentiary privilege such as the majority proposes to establish.
 
 
 
 [1]
 Professor Cella in The Doctrine of Legislative Privilege of Speech or Debate: The New Interpretation as a Threat to Legislative Co-equality, 8 Suffolk L.Rev. 1019, 1087 n.212 (1974), postulates that immunity for civil and criminal liability is the same. A differing view is set out in Reinstein & Silverglate, supra. See also Note, The Bribed Congressman's Immunity from Prosecution, 75 Yale L.J. 335 (1965)
 
 
 [2]
 The Pennsylvania Supreme Court in Consumer's Education v. Nolan, 368 A.2d 675, 680 (1977), said that the state constitutional provisions are essentially identical to those in the United States Constitution
 
 
 [3]
 Amendment IX. The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people
 Amendment X. The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.
 Amendment XI. The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 3a The case has evoked mixed reaction by student commentators. See 8 Rut.-Cam.L.J. 550 (1977); 45 Cin.L.Rev. 325 (1976).
 
 
 [4]
 Rules of the Pennsylvania Senate § 25 reads:
 "The records of the Senate may be inspected by the members, but no papers shall be withdrawn therefrom without the consent of the Senate."
 The wording of the rule does not prohibit disclosure, nor copying for valid reasons. We believe that production of true copies of the Senate records would be sufficient compliance with the subpoenas. Consequently, there is no need to analyze the legal effect of a rule passed by only one house of a bicameral legislature. Cf. In the Matter of Grand Jury Impaneled January 21, 1975, supra. In that case, we recognized that where important federal interests are concerned, we will not accept without examination the state's policy of confidentiality.