**STAR DISTRIBUTORS, LTD.,** Bo-Na-Te Distributors, Inc. and Model Magazine Distributors, Inc., Plaintiffs-Appellants,

v.

**Ralph J. MARINO,** Individually and as Chairman, Abraham Bernstein and Albert B. Lewis, Individually and as Members of the New York State Select Legislative Committee on Crime, Its Causes, Control and Effect on Society, Sidney Baumgarten, Individually, and as Assistant to the Mayor of the City of New York, Abraham Beame, Individually and as Mayor of the City of New York, Jeremiah T. Walsh, Individually and as Commissioner of Buildings of the City of New York, Cornelius F. Dennis, Individually and as Borough Superintendent of the Department of Buildings of the City of New York, Defendants-Appellees.

No. 268, Docket 79–7448.

United States Court of Appeals, Second Circuit.

Argued Nov. 5, 1979.

Decided Jan. 2, 1980.

Ralph J. Schwarz, Jr., New York City, for plaintiffs-appellants.

Jeremiah B. McKenna, New York City, for defendants-appellees.

Before FEINBERG and MANSFIELD, Circuit Judges, and MISHLER, Chief Judge.*

MANSFIELD, Circuit Judge:

Plaintiffs appeal from the order of June 4, 1979, of the District Court for the Southern District of New York, Gagliardi, Judge, denying their motion for a preliminary injunction. They seek to restrain the members of the New York State Select Legislation Committee on Crime, Its Causes, Control and Effect on Society (Select Committee), as well as several local officials, from enforcing three subpoenas duces tecum ordering production of various corporate records at a Select Committee hearing. We affirm the denial of a preliminary injunction.

Appellants Star Distributors, Ltd. (Star), Bo-Na-Te Distributors, Inc. (Bo-Na-Te), and Model Magazine Distributors, Inc. (Model) are engaged in the printing, publication and distribution of sexually-oriented material. The Select Committee is composed of members of the New York State Legislature authorized to investigate the "entire subject of offensive and obscene publications, motion and still pictures . . . as well as every matter . . . relevant to organized crime and to make recommendations for remedial legislation." On October 24, 1977, the Select Committee issued subpoenas duces tecum ordering appellants to appear before them and to bring with them assorted corporate books, minutes, tax returns, retainer agreements, ledgers, leases and lists of vendors and vendees. The Committee does not propose to examine these records, but wants them brought to the hearing to avoid repeated adjournments if the witnesses need to consult the records in order to answer questions.

The subpoenas stated that the purpose of the hearing was

"to investigate and identify the existence of illicit establishments engaged in prostitution, obscenity, and other violations of law; to determine the involvement in such activities of organized criminal elements; to determine persons, firms, or corporations responsible for and/or profiteering from the establishment, promotion, and existence of such illicit enterprises; to determine its causes and its effects on legitimate commercial activity and to devise and recommend remedial legislation."

The investigation was focused on "child pornography," i. e., the exploitation and employment of juveniles in sexually-oriented materials, and infiltration of organized crime into the industry. The subpoena to Star arose out of information gathered by the Committee from two sources. First, an unnamed convicted child pornographer informed the Select Committee's counsel that Star had distributed his photographs of children engaged in deviant sexual activities. Second, the 1971 annual report of the New York State Commission of Investigation had stated:

"Star, a failing firm, received what amounted to a mysterious financial transfusion. Shortly thereafter, a partner identified with organized crime appeared on the scene. Star then greatly expanded its operations, even reaching out into the international scene. A main beneficiary of this expansion and the subsequent increased profits was organized crime." Thirteenth Annual Report, New York State Commission of Investigation 212 (1971).

* Of the United States District Court for the Eastern District of New York, sitting by designation.

Star and Bo-Na-Te share headquarters and management. The record does not disclose how Model is connected, beyond the statement in appellee's brief that the three are "linked together." The appellants deny their involvement in child pornography and organized crime.

Upon receipt of the subpoenas, appellants filed suit under 42 U.S.C. § 1983 alleging a violation of their First Amendment rights, seeking injunctive relief and damages. On June 4, 1979, Judge Gagliardi denied their motion for a preliminary injunction,[1] ruling that Model had not shown that the requested disclosure would inhibit its exercise of First Amendment rights, and therefore that they were not entitled to preliminary relief. While Star and Bo-Na-Te had made such a showing, the court held that the state had shown "a substantial relation between a compelling state interest and disclosure of the information sought," and therefore denied plaintiffs' motion. Plaintiffs now appeal this order. We affirm without reaching the merits.

## DISCUSSION

█ The threshold question is whether appellees are immune from this suit against them. Immunity may be invoked by legislators in a number of different types of cases, with different consequences. Here we are concerned only with immunity from federal civil lawsuits. A federal legislator may seek protection from such suits under the Speech or Debate Clause of the United States Constitution;[2] whereas state legislators invoke common law immunity.[3]

█ Federal legislators acting within the scope of their legislative function are immune from both damage and injunction suits, *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1974); see *Doe v. McMillan*, 412 U.S. 306, 312, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967). State legislators (sued under § 1983) are similarly immune from damage suits, *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The Supreme Court has not reached the question of whether *state* legislators are immune from § 1983 suits for *injunctive* relief as well. The present case raises that issue, and we conclude that these suits should be treated no differently than (1) civil *damage* actions against state legislators, and (2) civil injunction suits against *federal* legislators, categories with which the Supreme Court has dealt.[4]

Were this an action under § 1983 for damages rather than injunctive relief, the suit would clearly be precluded by legislative immunity. The Supreme Court has on several occasions held that "§ 1983 is to be read in harmony with general principles of tort immunities."[5] *Imbler v. Pachtman*,

---

**1.** Judge Gagliardi's order speaks only of defendant members of the Select Committee, but obviously applies to the other defendants as well. Those defendants are the Mayor of New York, one of his assistants, and the city and borough buildings commissioners. Since none of these officials has the power to enforce the subpoenas, see New York Civil Practice Laws and Rules § 2308(b), it was proper to deny the relief sought against them.

**2.** "[F]or any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1.

**3.** The federal Speech or Debate Clause does not itself protect state legislators. *Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 404, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

**4.** A number of courts have recently held that there is no common law immunity from *criminal* prosecution. See *United States v. Gillock*, 587 F.2d 284, 296 (6th Cir. 1978), *cert. granted*, 441 U.S. 942, 99 S.Ct. 2159, 60 L.Ed.2d 1043 (1979); *United States v. DiCarlo*, 565 F.2d 802 (1st Cir. 1977), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978); *In re Grand Jury Proceedings*, 563 F.2d 577, 582–83 (3d Cir. 1977); *United States v. Craig*, 537 F.2d 957 (7th Cir.), *cert. denied sub nom. Markert v. United States*, 429 U.S. 999, 97 S.Ct. 526, 50 L.Ed.2d 609 (1976).

**5.** Various degrees of immunity under the common law have been recognized by the Supreme Court for other government officials. See *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (federal executive officials); *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison administra-

424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976). In *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), a suit for damages, the Court established that "the statute of 1871 [§ 1983] does not create liability" for acts of a state legislative committee "in a field where legislators traditionally have power to act." *Id.* at 379, 71 S.Ct. at 789.

The plaintiff in *Tenney* claimed that certain hearings of the California Senate Un-American Activities Committee were intended to smear him rather than to further any legitimate legislative purpose. Justice Frankfurter, writing for the Court, determined that the historical recognition of "the freedom of State legislators acting within their traditional sphere" had not been curtailed by the enactment of § 1983. 341 U.S. at 376, 71 S.Ct. at 788. He drew heavily on the common origins of the common law immunity and the Speech or Debate Clause contained in the United States Constitution and nearly all of the state constitutions.[6] Those origins included the British Parliamentary struggles of the sixteenth and seventeenth centuries and the Bill of Rights of 1689.[7] *Tenney*, like the cases construing the Speech or Debate Clause, "recognizes the need for immunity to protect the 'public good.'" *Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 404–05, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979).

■ Immunity from damages is not inevitably accompanied by immunity from injunctive relief. *Wood v. Strickland*, 420 U.S. 308, 315 n.6, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). However, the justification for legislative immunity against injunctive re-

lief, while somewhat different from that for immunity from damages, is no less compelling. The threat of an award of damages, like the threat of a criminal prosecution, may chill legislators in the performance of their duties, *Gravel v. United States*, 408 U.S. 606, 617–18, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *Tenney v. Brandhove, supra,* 341 U.S. at 377, 71 S.Ct. 783. The deterrent effect of the threat of injunctive relief may be less but the "cost and inconvenience and distractions of a trial upon a conclusion of the pleader" remain. *Id.* Indeed,

"a private civil action, whether for an injunction or damages, creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation. Private civil actions also may be used to delay and disrupt the legislative function." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1974).

This reasoning, which has led the Supreme Court to find immunity from suits for injunctive relief under the federal Speech or Debate Clause for members of Congress, applies equally here.

Thus the public interest in holding legislators immune from civil suits seeking injunctive relief is substantial. Moreover, the individual alleging constitutional injury is in a position to protect himself in cases such as this. When the subpoena is directed at the party claiming a constitutional violation, that party has the option of refusing to comply. Should the legislature seek to hold him in contempt, its immunity from

tors); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (superintendent of state hospital); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board members); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (state executive officials); and *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (judges, policemen).

6.  See *Tenney v. Brandhove,* 341 U.S. 367, 375 & n.5, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). New York's Constitution states, "For any speech or

debate in either house of the legislature, the members shall not be questioned in any other place," art. 3, § 11, and New York's courts have drawn no distinction between the federal and state provisions. See, e. g., *Board of Education v. Buffalo Council of Supervisors and Administrators,* 52 A.D.2d 220, 383 N.Y.S.2d 732, 735–36 (4th Dept. 1976).

7.  "That the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament." 1 Wm. & Mary, Sess. 2, c. 2.

civil suit would not preclude him from raising his constitutional claim as a defense.[8] *Id.* at 501 n.14, 95 S.Ct. 1813. See, e. g., *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *United States v. McSurely*, 154 U.S.App.D.C. 141, 473 F.2d 1178 (D.C. Cir. 1972). The court would not then be interfering with the functioning of the legislature; interference would already have occurred, and the legislature would be seeking the aid of the courts.[9]

Were the defendants in this case federal rather than state legislators, the suit would clearly be precluded by the Speech or Debate Clause. In *Eastland v. United States Servicemen's Fund, supra,* a Senate subcommittee subpoenaed bank records of the United States Servicemen's Fund (USSF), an organization opposed to the Vietnam War which ran "coffee-houses" near American military installations. USSF brought suit to enjoin implementation of the subpoenas, alleging First Amendment violations. The Supreme Court held that the Speech or Debate Clause barred the lawsuit, reaffirming the principle of *Dombrowski v. Eastland,* 387 U.S. 82, 84–85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), that

> "It is the purpose and office of the doctrine of legislative immunity, having its roots as it does in the Speech or Debate Clause of the Constitution, . . . that legislators engaged 'in the sphere of legitimate legislative activity' . . .

should be protected not only from the consequences of litigation's results but also from the burden of defending themselves."

See also *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The Court, as described above, was concerned that allowing these lawsuits to proceed would interfere with ongoing investigations and other activities essential to the performance of the legislative function. See also *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *United States v. American Telephone & Telegraph Co.,* 185 U.S.App.D.C. 254, 263, 567 F.2d 121, 130 (D.C. Cir. 1977).

At issue, then, is whether the immunity of State legislators from suit here under § 1983 should be the same as that of federal congressmen under the Speech or Debate Clause. The Supreme Court has stated in dictum that "the state legislative privilege [in § 1983 suits is] on a parity with the similar federal privilege" under the Speech or Debate Clause. *United States v. Johnson,* 383 U.S. 169, 180, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966). We find further support for this proposition in the fact that *Tenney* was based on the similarity between common law immunity and Speech or Debate Clause immunity. The shared origins and justifications of these two doctrines would render it inappropriate for us to differentiate the scope of the two without good reason.[10]

---

8. This would arise in a prosecution for criminal contempt under N.Y.Penal Law § 215.60. The alternative means of enforcement is civil contempt, N.Y.Legis.Law § 4(5), which would entail a proceeding under N.Y.Civil Practice Laws and Rules § 2308(b). The subpoenaed party would be able to raise his claims as a defense. See *Myerson v. Lentini Bros.,* 33 N.Y.2d 250, 351 N.Y.S.2d 687, 306 N.E.2d 804 (1973). In addition, the claims could be raised later in a petition for habeas corpus. See, e. g., *People ex rel. McDonald v. Keeler,* 99 N.Y. 463, 484–85, 2 N.E. 615, 625–26 (1885).

9. We need not determine whether the Speech or Debate Clause would apply or whether common law immunity could be invoked if the subpoena were directed at a third party, which could not be expected to refuse to comply and thereby preserve the asserted First Amendment

rights. See *Eastland v. United States Servicemen's Fund, supra,* 421 U.S. at 513–18, 95 S.Ct. 1813 (Marshall, J., concurring).

10. Appellants contend that the scopes should differ. They argue that by extending state legislative immunity to suits for injunctive relief we deprive them of their "right" to raise their constitutional claim in federal court. We find this argument unconvincing. First, it is not uncommon for federal courts to refuse to act when a federal defense can be raised in a state proceeding. See, e. g., *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Second, we have full confidence in the ability of the state court judges, who are sworn to uphold the constitution, to adjudicate federal constitutional claims properly. Third, recourse to the federal courts is available, after exhaustion of state court proceedings, via appeal to

It may be argued that federal courts should observe a broader immunity for federal legislators than for state legislators because there is a separation of powers concern with respect to the former, see, e. g., *United States v. Johnson, supra*, 383 U.S. at 181, 86 S.Ct. at 755 ("the central role of the Speech or Debate Clause [is] to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary"), which may be lacking with respect to the latter. *Tenney*, however, demonstrates that the immunity of state legislatures must be recognized by us.

Moreover, under our system of federalism, the role of the state legislature is entitled to as much judicial respect as that of Congress. Congress may legislate on matters of national concern, while state legislators act on vital matters of local importance. The need for a Congress which may act free of interference by the courts is neither more nor less than the need for unimpaired state legislatures. We show no more than "a proper respect for state functions," *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), in holding that state legislators must be accorded a privilege similar to that of federal legislators. "To create a system in which the Bill of Rights monitors more closely the conduct of state officials than it does that of federal officials is to stand the constitutional design on its head." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978).

We therefore conclude that state legislators, to the same extent as their federal counterparts, are immune from suit under § 1983 for injunctive relief as well as damages based on their activities within the traditional sphere of legislative activity.[11] Since the committee investigation forming

the basis of this suit was admittedly well within the bounds of that power, *Watkins v. United States*, 354 U.S. 178, 188, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957); *McGrain v. Daugherty*, 273 U.S. 135, 175, 47 S.Ct. 319, 71 L.Ed. 580 (1927), this § 1983 action is precluded by legislative immunity.

Appellants cite three cases which they claim demonstrate that state legislative immunity under § 1983 does not extend to suits for injunctive relief. Each of these cases is distinguishable on its facts. In addition, we note that all three were decided before the Supreme Court, in *Eastland v. United States Servicemen's Fund, supra*, determined that the Speech or Debate Clause extended to suits for injunctive relief.

In *Bond v. Floyd*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966), the Supreme Court reversed a lower court's denial of injunctive relief against the Georgia House of Representatives in favor of an elected Representative who had been excluded from his seat because of his political statements. From this the appellants would have us conclude that there is no legislative immunity from injunctive relief. However, a review of the record in that case reveals that the legislators never raised the defense of immunity. Moreover, no mention of legislative immunity was made by the Court. The matter, therefore, was not before the Court. In addition, the act of refusing to seat a member has never been determined to be protected by any type of immunity. The Supreme Court in *Powell v. McCormack, supra*, 395 U.S. at 506 n.26, 89 S.Ct. 1944 expressly declined to determine whether similar activity by congressmen would be protected by the Speech or Debate Clause.

In *Jordan v. Hutcheson*, 323 F.2d 597 (4th Cir. 1963), plaintiff lawyers sued for injunc-

---

the Supreme Court or by petition for the writ of habeas corpus in federal court.

**11.** The Fifth Circuit reached the same conclusion without discussion in *City of Safety Harbor v. Birchfield*, 529 F.2d 1251 (5th Cir. 1976). A number of courts have indicated their belief that state legislators are not immune from injunctive relief. *Jordan v. Hutcheson*, 323 F.2d

597, 602 (4th Cir. 1963); *Gewertz v. Jackman*, 467 F.Supp. 1047, 1056 (D.N.J.1979); *Kucinich v. Forbes*, 432 F.Supp. 1101, 1108 n.8 (N.D. Ohio) (dictum). Cf. *In re Grand Jury Proceedings*, 563 F.2d 577, 587 (3d Cir. 1977) (Gibbons, J., concurring) (immunity from damage relief appropriate only because injunctive relief available).

**10**

tive relief against members of a state legislative committee which had investigated them and their friends and clients, urged their clients to abandon them, raided their offices and published statements naming them as violators of the law. The court held that injunctive relief could be granted. While the court did distinguish *Tenney v. Brandhove* as a suit involving only damages, *id.* at 602, the legislative conduct in *Jordan* was so far beyond the bounds of legitimate legislative activity that neither the common law nor the Speech or Debate Clause could immunize the committee. See *Doe v. McMillan, supra,* 412 U.S. at 313, 93 S.Ct. 2018; *Gravel v. United States, supra,* 408 U.S. at 625, 92 S.Ct. 2614.

In *Bush v. Orleans Parish School Board,* 191 F.Supp. 871 (E.D.La.) (3-judge court), *aff'd sub nom. Denny v. Bush,* 367 U.S. 908, 81 S.Ct. 1917, 6 L.Ed.2d 1249 (1961), the court enjoined the Louisiana State Legislature from continuing its defiance of federal court desegregation orders. That case involved an entirely different set of circumstances from that in the present case. The injunction was granted not pursuant to a private § 1983 civil action but on a motion by the United States to vindicate the authority of a federal court. It attacked an "obvious" pattern of "delay, evasion, obstruction, defiance and reprisal." That holding is in no way inconsistent with our holding today.

We therefore hold that the defendant members of the New York State Legislature in the present case are immunized from suit for injunctive relief under 42 U.S.C. § 1983, sought against enforcement of their subpoenas duces tecum which were issued in the course of a fully-authorized, legitimate investigation into child pornography and the involvement of organized crime in the production and distribution of sexually-oriented material.

The denial of preliminary relief is affirmed.