See also 3d Cir., 587 F.2d 598.

**In re GRAND JURY INVESTIGATION INTO POSSIBLE VIOLATIONS OF TITLE 18, UNITED STATES CODE, SECTIONS 201, 371, 1962, 1952, 1951, 1503, 1343 AND 1341 "A", Intervenor, Appellant.**

No. 78–1755.

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1978.

Decided Oct. 20, 1978.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, App. Section, Frank H. Sherman, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

John Rogers Carroll, Thomas Colas Carroll, Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for intervenor "A".

Stanley M. Brand, General Counsel to the Clerk, Steven R. Ross, Asst. Counsel to the Clerk, U. S. House of Representatives, Washington, D. C., for amicus curiae.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This is an appeal from the denial of a motion by an intervenor to quash a grand jury subpoena addressed to the Clerk of the House of Representatives. The proceedings commenced when on March 6, 1978, the United States Attorney for the Eastern District of Pennsylvania filed an ex parte motion for an order authorizing a subpoena *duces tecum* to the Honorable Edmund L. Henshaw, Clerk of the House of Representatives. The motion sought to compel the Clerk's appearance before a grand jury in the Eastern District, together with his production of all records reflecting telephone toll charges for calls from and charged to the Office of Representative Joshua Eilberg for the years 1973 through and including March 2, 1978. This motion was apparently made in order to comply with House Resolution 10 of January 4, 1977.[1] Thus, the

---

1. Whereas, by the privileges of this House no evidence of a documentary character under the control and in the possession of the House of Representatives can by the mandate of process of the ordinary courts of justice be taken from such control or possession except by its permission: Therefore, be it

Resolved, That when it appears by the order of any court in the United States or a judge thereof, or of any legal officer charged with the administration of the orders of such court or judge, that documentary evidence in the possession and under the control of the House is needful for use in any court of justice or before any judge or such legal officer, for the promotion of justice, this House will take such action thereon as will promote the ends of justice consistently with the privileges and rights of this House; and be it further

Resolved, That during the Ninety-fifth Congress, when a subpena or other order for the production or disclosure of information is by the due process of any court in the United States served upon any Member, officer, or employee of the House of Representatives, directing appearance as a witness before the said court at any time and the production of certain and sundry papers in the possession

motion submitted by the United States Attorney disclosed that the grand jury was investigating possible violations of federal criminal law in connection with the funding and construction of a hospital in Philadelphia. The district court concluded on the same day that the proposed subpoena was for records "necessary, material and relevant to a pending Grand Jury investigation," (A–34), and authorized its service. Learning of the service of the subpoena, Congressman Eilberg, identified in the moving papers as Intervenor A, sought to intervene and to quash the subpoena. He advanced three grounds: (1) insufficient compliance with H.R. 10; (2) insufficient compliance with this Circuit's *Schofield* rule;[2] and (3) prohibition of use of the records by the Speech or Debate Clause of the Constitution, art. 1, § 6, cl. 1. The United States Attorney, conceding that the Congressman is a target of the grand jury investigation (A–7 to A–8), did not oppose intervention, and the court held a hearing on the motion to quash.

The district court held that Mr. Eilberg lacked standing to object to the manner in which the court complied with H.R. 10 because that rule was intended for the institutional protection of the House Records.

Since the subpoena was not directed to him, but to the Clerk of the House, the court also held that the Congressman lacked standing to make a *Schofield* challenge to its scope. As to the Speech or Debate Clause, the court held that the records in question, which revealed no more than the time, duration and location of parties to a conversation, did not fall within its scope. Recognizing, however, that the availability to the grand jury of the identity of the callers would inevitably lead to further inquiry which might result in evidentiary use against Mr. Eilberg of legislative acts protected by the Speech or Debate Clause, it issued a supplementary order, providing that no evidence concerning the conversations which took place during the calls listed in the subpoenaed records be presented or disclosed to the grand jury except with its approval after an in camera proceeding. This appeal followed.[3]

## I. H.R. 10

We have had the benefit of a brief amicus curiae from the General Counsel to the Clerk of the House, with respect to the contention that there was insufficient compliance with H.R. 10. The brief describes the manner in which the telephone toll rec-

and under the control of the House of Representatives, that any such Member, officer, or employee of the House, after notifying the Speaker, is authorized to appear before said court at the place and time named in any such subpena or order, but no papers or documents in the possession or under the control of the House of Representatives shall be produced in response thereto; and be it further

Resolved, That after the Speaker has been notified by the Member, officer, or employee that a proper court has determined upon the materiality and relevancy of specific papers or documents called for in the subpena or other order, then said court through any of its officers or agents shall have full permission to attend with all proper parties to the proceedings before said court and at a place under the orders and control of the House of Representatives and take copies of the said documents or papers and the Clerk of the House is authorized to supply certified copies of such documents that the court has found to be material and relevant, except that under no circumstances shall any minutes or transcripts of executive sessions, or any evi-

dence of witnesses in respect thereto be disclosed or copied, nor shall the possession of said documents and papers by any Member, officer, or employee of the House be disturbed or removed from their place of file or custody under said Member, officer, or employee; and be it further

Resolved, That the House of Representatives reserves to itself the power to revoke or modify the authority contained herein in all or specific instances; and be it further

Resolved, That a copy of these resolutions be transmitted by the Clerk of the House to any of said courts whenever such writs of subpena or other orders are issued and served as aforesaid.

2. *In re Grand Jury Proceedings (Schofield I)*, 486 F.2d 85 (3d Cir. 1973); *In re Grand Jury Proceedings (Schofield II)*, 507 F.2d 963 (3d Cir.), cert. denied, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).

3. We have jurisdiction over the intervenor's appeal. *In re Grand Jury Proceedings (Cianfrani)*, 563 F.2d 577, 580 (3d Cir. 1977).

ords are maintained, and suggests that Mr. Eilberg's Speech or Debate contention presents a significant constitutional question which can be obviated by a proper application of H.R. 10. The brief further points out that the House Resolution confers consent (absent a revocation by House action) to the production of House documents where "a proper court has determined upon the materiality and relevancy of *specific* paper or documents called for in the subpoena" (emphasis supplied). It suggests that the general finding of materiality made by the district court was insufficiently specific. Instead, the court should have limited the subpoena to one or more specific telephone numbers or locations relevant to the investigation.

> "Amicus submits to this court that it is entirely reasonable for this court to remand this matter to the District Court with instructions to that court, upon representations made by the Government, to issue a finding of materiality and relevancy which is narrow enough in its scope so as to avoid any unnecessary infringement on the privileges of the legislature, but which still will instruct the House to produce the specific documents necessary to the Government's investigation."

Amicus brief 11–12. In the district court, however, the Clerk of the House did not resist the subpoena, but stood ready to comply. Since that was so, there was no occasion for the district court to consider, and there is no reason for this court to rule upon, the question whether H.R. 10 requires a more specific governmental showing, and judicial finding, of relevancy of the subpoenaed materials than was made and found here. It seems clear from H.R. 10 that the House believes it has the power to resist a valid subpoena from a court in some instances. Possibly it would rest its power to do so on Article I, § 5, cl. 3,[4] since the resolution refers to "the privileges and rights of this House." Textually, at least, the resolution does not seem aimed at vindication of the Speech or Debate Clause privilege of House members. That privilege,

although of great institutional interest to the House as a whole, is also personal to each member. Whether it could be narrowed by Congressional action to the member's detriment is a question carefully reserved in *United States v. Brewster*, 408 U.S. 501, 529 n.18, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) and *United States v. Johnson*, 383 U.S. 169, 185, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). Whether it could be enlarged by legislation, or more particularly by the nonstatutory action of a single house, so as to place beyond the subpoena power of the judicial branch matters not actually within the Speech or Debate Clause privilege is an open question of considerable delicacy. *See United States v. Liddy*, 177 U.S.App.D.C. 1, 7–8, 542 F.2d 76, 82–83 (1976); *Calley v. Calloway*, 519 F.2d 184, 219–22 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976). But this is not a proper case to decide whether the House has the power to restrict or expand the reach of the Speech or Debate Clause beyond that which a court might otherwise determine. On the present record the House has not taken a position in opposition to the subpoena. We agree with the district court that in challenging a subpoena to the Clerk for House Records, an individual congressman lacks standing as an intervenor to assert in his individual interest whatever institutional interest the House as a whole may have in a more particularized compliance with its resolution. Thus we reject Mr. Eilberg's contention that H.R. 10 requires a remand, and reject, as well, the invitation of the Clerk of the House as amicus curiae to rely on that resolution as a reason for a remand.

## II. THE *SCHOFIELD* RULE

In *Schofield I*, this court held that in dealing with a witness who resists a grand jury subpoena, a district court must, before adjudging the witness in contempt, require that the government make some preliminary showing by affidavit that each item subpoenaed is relevant to an investigation

---

4. "Each House shall keep a Journal of its Proceedings, and from time to time publish the

same, excepting such Parts as may in their Judgment require Secrecy; . . . .."

being conducted by the grand jury, properly within its jurisdiction and not sought for another purpose. 486 F.2d 85, 93. We also held that absent extraordinary circumstances, the government's affidavit of relevancy should be disclosed to the prospective witness. *Id.* Congressman Eilberg urges that the *Schofield* rule be extended to intervenors. He points out that in this instance the court acted ex parte, and that he never had an opportunity to contest the government's affidavit setting forth relevance and grand jury jurisdiction. In this instance, in which the object of the grand jury investigation is common knowledge in Philadelphia, however, he can point to no prejudice from his failure to see the affidavit, and does not suggest that he could have put in issue the bona fides of the grand jury investigation. As the district court observed, ". . . it is . . . difficult to take seriously any suggestion that the relevance of the subpoenaed records is in doubt, or that the Congressman or his counsel need to examine written affidavits in order to gauge relevancy." (A–10). Even if Mr. Eilberg fell within the *Schofield* rule, he would not on the present record derive any benefit from it. Thus we need not consider whether, in an appropriate case, an intervenor who suffers injury from the improper use of a grand jury subpoena addressed to a third party may insist upon the kind of showing of relevancy and proper purpose which under *Schofield* a witness may insist upon. The *Schofield* rule has thus far been applied only for the benefit of persons subpoenaed to appear before the grand jury. Consideration of its extension should await a case in which an intervenor can make at least a colorable claim that the court might find an improper use of the subpoena.

## III. THE SPEECH OR DEBATE CLAIM

■ The caselaw is clear that a legislator asserting the invasion of the Speech or Debate Clause privilege by use of a grand jury subpoena to a third party may intervene and oppose such use. *E. g., Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *cf. In re Grand Jury Proceedings (Cianfrani),* 563 F.2d 577 (3d

Cir. 1977) (state senator; suppression hearing). The district court acknowledged as much, but held that the instant subpoena "does not in any way trench upon the speech or debate privilege. At most, compliance with the subpoena would provide information, some small portion of which would conceivably lead to the discovery that a legislative act was performed." (A–12). This holding obviated the necessity for considering difficult questions of burden of proof and appropriate procedures for the resolution of the privilege claim.

■ Both the Congressman and the Clerk of the House as amicus contend that the court's ruling, while having the merit of simplicity, was overly simplistic. They contend, and we would in any event take judicial notice, that the telephone is the single most important and often used instrument of communication in the House of Representatives. It may be used by the Majority and Minority Whips of the House to transmit information on scheduling of votes and other related legislative information. It may be used by House members in the process of persuading each other on the merits of proposed legislation. Such uses are legislative acts by even the narrowest test of the few cases which have considered what acts fall within the Speech or Debate Clause. Those uses are plainly integral to the deliberative or communicative processes of the House.

Probably the most restrictive reading of the Speech or Debate Clause is that in *Gravel v. United States, supra.* Read broadly, that case might exclude from the protections of the clause all acts in preparation for legislation or legislative hearings, as well as all private dissemination by a congressman of information gathered for a hearing. *See, e. g.,* Reinstein & Silverglate, *Legislative Privilege and the Separation of Powers,* 86 Harv.L.Rev. 1113, 1155 (1973); *The Supreme Court, 1971 Term,* 86 Harv.L. Rev. 50, 189, 193–94 (1972). *Compare United States v. Dowdy,* 479 F.2d 213, 224 n.20 (4th Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973); Kaye, *Congres-*

*sional Papers, Judicial Subpoenas, and the Constitution*, 24 U.C.L.A.L.Rev. 523, 563 n.172 (1977). Arguably, the widest implications of *Gravel* might foreclose protection for the toll records subpoenaed in the instant case. Yet even *Gravel* protects from inquiry any act which is an

> integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings . . . with respect to . . matters . . . within the jurisdiction of either House.

408 U.S. at 625, 92 S.Ct. at 2627.

Moreover, although *Gravel* seems to permit inquiry into otherwise lawful steps taken by a congressman or his staff in preparation for legislation or legislative hearings, the opinion of the Court appears to permit such inquiry only when "it proves relevant to investigating possible *third-party* crime." 408 U.S. at 629, 92 S.Ct. at 2629 (emphasis supplied). In this case the United States Attorney has disclosed that while third parties were involved in the alleged crimes being investigated, Mr. Eilberg is himself a target of the grand jury inquiry (A–7 to A–8). The holding in *Gravel*, which is a testimonial privilege case, does not rule upon the question whether use against a legislator of his own or his staff's communications in preparation for legislation is permissible under the Speech or Debate Clause.[5] Thus, telephone calls, placed or received by Mr. Eilberg or his staff in gathering from outsiders information which is weighed in the process of deciding how to vote, in drafting legislation, and in preparing for argument, may still be privileged as to use against him, even if not as to use against third parties. While we do not now resolve that thorny issue, we recognize that it may be necessary to make an appropriate record for its ultimate resolution.

■ The government concedes for purposes of the appeal only that many of the telephone calls memorialized in the subpoenaed toll records may have been legislative acts. It urges, however, that the toll records themselves may nevertheless be used,

even against the Congressman, because in themselves they do not reveal the content of the conversation which occurred. The records do, however, reflect the fact that on a given date at a given time a conversation of a specific duration took place between the Congressman's office and a person or office at an identifiable location. These very documents, at least as to some telephone calls, record the fact that a legislative act took place. We can envision circumstances in which the mere fact that a telephone call took place between the Congressman and another House member on a given date would be a vital evidentiary fact, even though the call concerned arranging for a pairing of votes so that both could absent themselves from the House on the date of a vote without affecting the outcome. We cannot imagine why the toll record of such a call should not be protected. The use of such a record as a link in the chain of evidence used to incriminate the Congressman plainly constitutes the use of a legislative act for that purpose. We therefore reject the United States Attorney's basic position, which the district court accepted, that the toll records can never fall within the protection of the Speech or Debate Clause.

■ But we reject, as well, Mr. Eilberg's basic position, that because some of the calls reflected in a telephone bill reflect legislative acts the entire bill should be suppressed. Under the practice of the House, telephone billings for long distance phone service are forwarded to each member by the Clerk. Personal or unofficial calls are noted on the original bills by the Member's office. The original bills are then forwarded to the Office of Finance, accompanied by checks for the unofficial service. The balance, for official service, is then charged to the Member's allowance. Thus it is clear that the subpoenaed documents, reflecting as they do certain purely personal phone calls, necessarily include some calls which by even the most generous reading of the Speech or Debate Clause are not pro-

---

5. *But cf. United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972).

tected. Mr. Eilberg does not contend otherwise. Instead he urges that in order to advance the policy of the constitutional legislative privilege we should rule that when a House document contains both privileged and unprivileged materials the entire document is privileged. This course, he suggests, advances the policies behind the Speech or Debate Clause, one of which is to protect legislators from the executive branch harassment entailed in rummaging through partially privileged records. While there is much to be said for such a rule, we think it is foreclosed by *Gravel v. United States, supra,* which authorizes rather wholesale rummaging in the interest of discovering and prosecuting third party crimes. The argument would, perhaps, be more substantial if the subpoena were addressed to the Congressman himself or to members of his staff, and thus required his or their testimony respecting records, partially privileged, maintained by them. Here, however, the records were created in the first instance by the telephone company, and are maintained by a third party, the Clerk. They are privileged only because, like a newspaper, they record some legislative acts. Only the use against the Congressman of those portions which record such legislative acts offends the Speech or Debate Clause.

■ Anticipating that we might reject his basic position, Mr. Eilberg urges that at a minimum, when documents reflecting some legislative acts are sought, the agency seeking the subpoena should be required to establish which parts of them are non-privileged, and the court should permit a subpoena only for those parts. The United States Attorney responds, and we agree, that in the present context it would be impossible for him to meet such a burden since the information necessary for separation of legislative calls from non-legislative calls is not in its possession.

■ Finally, Mr. Eilberg urges that the executive branch should not have access to the toll records until the Court first goes through them, hears him or his staff *in camera* but out of the presence of the Unit-

ed States Attorney, and makes a preliminary determination as to which calls record legislative acts. This suggestion, we think, is based on a misconception of the nature of the Speech or Debate privilege. Unlike privileges such as attorney-client, physician-patient, or priest-penitent, the purpose of which is to prevent disclosures which would tend to inhibit the development of socially desirable confidential relationships, *see* Note, *The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement,* 91 Harv.L.Rev. 464, 465–66 (1977), the Speech or Debate privilege is at its core a use privilege. *See United States v. Helstoski,* 576 F.2d 511, 523 (3d Cir.), *cert. granted,* —— U.S. ——, 99 S.Ct. 719, 58 L.Ed.2d ——, *In re Grand Jury Proceedings (Cianfrani), supra,* 563 F.2d at 584. The constitution clothes the legislator with a use immunity, analogous in many ways to the use immunity conferred upon witnesses. To be sure, the Speech or Debate Clause has also been construed to permit a legislator to refrain from *testifying* about certain legislative acts. In *Gravel v. United States, supra,* for example, Justice White wrote:

> We have no doubt that Senator Gravel may not be made to answer—either *in terms of questions* or in terms of defending himself from prosecution—for the events that occurred at the subcommittee meeting.

408 U.S. at 616, 92 S.Ct. at 2622 (emphasis supplied). This broad statement was made in the context of a Justice Department concession that a Senator, even a non-target, could not be compelled to testify before a grand jury about a legislative act. 408 U.S. at 616, 92 S.Ct. 2614. *Gravel* also held that the privilege not to testify about legislative acts applied to a Senator's personal aides. *Id.* at 616–18, 92 S.Ct. 2614. The Court reasoned that the Senator's testimonial privilege was designed to prevent hostile questioning by the executive branch before a possibly hostile judiciary. The personal aides were included in this testimonial privilege because the complexities of the modern legislative process made reliance upon

the assistance of such aides essential. *Id.* at 617, 92 S.Ct. 2614. Thus they, too, were to be protected from potentially hostile questioning. But to the extent that the Speech or Debate Clause creates a *testimonial* privilege as well as a *use* immunity, it does so only for the purpose of protecting the legislator and those intimately associated with him in the legislative process from the harassment of hostile questioning. It is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy. *See U. S. Const.* art. 1, § 5, cl. 3. As we have said on two other occasions, the privilege when applied to records or third-party testimony is one of nonevidentiary use, not of non-disclosure. *See United States v. Helstoski, supra; In re Grand Jury Proceedings (Cianfrani), supra.*

The policy against permitting hostile questioning, which justifies the testimonial privilege aspect of Speech or Debate Clause protection, is not implicated in this case. Neither Mr. Eilberg nor any of his personal aides has been subpoenaed. Of course, in a very broad sense the Clerk is an aide to every member of the House; but his relationship with any particular member is not such that there is a realistic possibility that questioning of him, hostile or friendly, will have an inhibiting effect upon that member's performance. Indeed in this case we have been informed that for part of the time period covered by the subpoena, the United States Attorney has subpoenaed duplicates of the telephone toll charge records from the Potomac Telephone Company. Hostile questioning of a record custodian from that company would have no inhibiting effect on the Congressman or his personal aides. Mr. Eilberg's relationship with the Clerk of the House, with respect to the telephone toll charges, is almost equally remote.

█ Since the testimonial privilege aspect of Speech or Debate protection is not implicated in this proceeding, while the use immunity aspect clearly is, our attention should focus on the latter in determining what procedure is appropriate for vindicat-

ing the Congressman's constitutional rights. The telephone toll charge records, whether they are obtained from the Clerk of the House or from the telephone company, are equally subject to use immunity. Obtained from either source, however, they may not be considered secret. Their examination by the executive branch prior to submission to the Court does not violate the Congressman's use immunity. Thus there is no reason why the United States Attorney should be excluded from participation in the judicial determination of the scope of that immunity.

█ We hold, then, that the district court did not err in refusing to quash the subpoena. But since we disagree with the district court about the applicability of the Speech or Debate Clause to those parts of the records which indicate the date, duration and location of parties to telephone calls which are legislative acts, we must address the question which it did not: what procedure should be followed in determining which calls should be kept from the grand jury.

█ Since the Congressman is asserting a use privilege personal to him, and since the information as to which calls were legislative acts is in his possession alone, the burden of going forward and of persuasion by a preponderance of the evidence falls on him. He should be permitted to indicate by affidavit or testimony those calls which he contends are privileged. If the United States Attorney contests that showing he should be permitted to offer evidence in opposition. Placing the burden of going forward and of persuasion on Mr. Eilberg presents, of course, the possibility that he will have to testify, and that the government will attempt to use that testimony against him if he should later be indicted and tried. Since, however, such testimony may be required in order to vindicate what the Congressman believes to be a valid constitutional right, no testimony so elicited may be used against him in any subsequent prosecution. *Simmons v. United States,* 390 U.S. 377, 393–94, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Inmon,* 568

F.2d 326, 332–33 (3d Cir. 1977). Appropriate steps should, of course, be taken to shield the grand jury from inadvertent exposure to material found to be privileged.

 One other contention of the United States Attorney bears mentioning. He urges that because a witness may not refuse to answer grand jury questions on the ground that the questions were based upon evidence obtained in violation of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), a congressman who is a target of a grand jury investigation should not be heard in opposition to the use of evidence of his constitutionally protected legislative acts. We see no parallel between the two situations. In *Calandra* the constitutional violation was, at least according to the Court's current majority, an unlawful search and not the subsequent use of the evidence so procured. The exclusionary rule, Justice Powell reasoned, is merely a nonconstitutional prophylactic rule aimed at future violations. 414 U.S. at 354, 94 S.Ct. 613. Under the Speech or Debate Clause, however, the constitutional violation is the use of legislative acts against a legislator. Unlike a violation of the Fourth Amendment, which the *Calandra* Court held to be a *past* abuse and thus the lawful basis for subsequent grand jury questioning, it is the *very* act of questioning that triggers the protections of the Speech or Debate Clause. In *United States v. Helstoski, supra,* we refused to issue a writ of mandamus to order a district court to dismiss an indictment said to be the product of Speech or Debate Clause violations. In *Helstoski,* however, we deferred consideration of the question whether such a dismissal is required until an appeal from a conviction. 576 F.2d at 519. Thus *Helstoski* is not authority for the proposition that materials falling within the protections of the Speech or Debate Clause may, over the timely objection of an affected legislator, be submitted to a grand jury. *Gravel v. United States, supra,* involved just such an objection, and its authority in this respect is in no way impaired by *United States v. Calandra, supra,* or *United States v. Helstoski, supra.*

## IV. CONCLUSION

The district court properly declined to quash the subpoena. Its protective order, designed to shield the grand jury only from the contents of telephone conversations was, however, less than is required for the vindication of the use immunity aspect of Mr. Eilberg's Speech or Debate Clause protections. The order appealed from will be vacated, and the case remanded to the district court for proceedings consistent with this opinion.