In re POSSIBLE VIOLATIONS OF 18
U.S.C. §§ 201, 371 Richard
Kelly, Intervenor.

Misc. No. 80–0059.

United States District Court,
District of Columbia.

March 19, 1980.

Stephen R. Spivack, Asst. U. S. Atty., Benjamin B. Sendor, Washington, D. C., for United States.

Anthony Battaglia, St. Petersburg, Florida; R. Keith Stroup, Washington, D. C., Gerald H. Goldstein, San Antonio, Texas; for Richard Kelly, Edward A. Mallett, Houston, Texas.

## MEMORANDUM AND ORDER

BRYANT, Chief Judge.

On February 13, 1980, the government issued a grand jury subpoena to Mr. Carl Cardin, Administrative Assistant to Congressman Richard Kelly. The subpoena commanded Mr. Cardin to produce for the grand jury the following documents belonging to Congressman Kelly dating from January 1, 1979 to the present: appointment diary, daily schedule, travel records, guest sign-in book, telephone message book, files and correspondence relating to various individuals and files relating to a trip to Israel in December 1979. Congressman Kelly, intervenor in the present case, has moved to quash the subpoena, claiming that it suffers from various infirmities. The Congressman has also moved for production of various documents currently in the possession of the government.

Congressman Kelly first attacks the form of the subpoena on the grounds that it does not comply with Rule 17 of the Federal Rules of Criminal Procedure. Rule 17(a) requires that a subpoena ". . . shall command each person to whom it is directed to attend and give testimony at the time

and place specified therein." The subpoena at issue here commanded Mr. Cardin "to attend before the Grand Jury" on February 22, 1980 at 10:00 a. m. He was directed to room # 2124 in this courthouse. Though room # 2124 is not identified in the subpoena, it is in fact an office of the U. S. Attorney.

On the face of it, this would appear to be a misuse of the subpoena power. Subpoenas under Rule 17 are for the purpose of compelling witnesses to appear at the "time and place" of the grand jury and for no other purpose. But as the record in this case now stands, this court has no basis to hold that the subpoena amounts to an abuse of grand jury process. According to the statements of government counsel at oral argument, the use of an office of the United States Attorney as a "check-in" point for witnesses serves two purposes. It allows for the witness to be directed to the room in which the grand jury is located, a logistical factor often not known at the time the subpoena is issued. It also allows the government attorneys to interview the witness, identify the nature of the proposed testimony or documentary submissions, and use this information to prepare an orderly presentation before the grand jury. Government counsel emphasized that these interviews are consensual; no witness is obligated to speak to a government attorney prior to appearing before the grand jury.

Though the grand jury may request evidence, it is the "United States Attorney who gathers the evidence" pursuant to a subpoena. *United States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 522 (E.D. N.Y.1974). And, as Judge Weinstein stated in *Kleen Laundry*, this role necessarily requires reviewing and analyzing evidentiary submissions outside of the presence of the grand jury "for later presentation to the grand jury." *Id.* at 521–23. The government asserts that the subpoena is made returnable to the prosecutor's office for a

similar purpose. This court neither condones nor condemns this practice. It is simply unable to hold that compulsory *contact* [1] between the U. S. Attorney and witness, on the day the grand jury is sitting and prior to the actual testimony of the witness, is adequate grounds to quash the subpoena. The cases cited by the defendants involve abusive activity by prosecutors using grand jury subpoenas. It is activity that this court condemns, but it is not the activity at issue in this case.

In light of this court's disposition of the Speech or Debate Clause issue, *infra* at 213–214, it appears most unlikely that Representative Kelly will suffer any disadvantage from contact between witness Cardin and government counsel prior to Cardin's testimony before the grand jury.

■ Congressman Kelly asserts that compliance with the subpoena would violate the Speech or Debate Clause of the Constitution. Although in his Memorandum of Law in Support of Motion to Quash Subpoena, the Congressman argues that if any of the material is privileged everything is privileged, this position was abandoned on oral argument. Thus, the only remaining question for the court on this issue is the proper procedure for determining what parts of the material fall under the protection of the Speech or Debate Clause.

This court is persuaded by the wisdom of the course followed by the United States Court of Appeals for the Third Circuit in the similar case of Congressman Eilberg. *In re Grand Jury Investigation*, 587 F.2d 589 (1978). In the case of Congressman Eilberg, the Third Circuit ordered an *in camera* hearing where the Congressman would be permitted to indicate the material he considered privileged. *Id.* at 597. The Third Circuit ruled that this *in camera* hearing should not be *ex parte* and that the government should have the opportunity to contest the claims of privilege. *Id.* The

---

1. Counsel for the government emphasized that interviews between the witness and prosecutor are purely consensual. Thus, the real issue is whether the initial contact that results from compulsory attendance at the office of the U. S. Attorney immediately prior to grand jury testimony (with its opportunity for a consensual interview) is impermissible.

burden of persuasion was placed on the Congressman. *Id.*

■ Therefore, in the present case Congressman Kelly may submit a *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), index of all material which is an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings . . . with respect to . . matters . . . within the jurisdiction of either House," *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972) *quoted in In re Grand Jury Investigations*, 587 F.2d 589, 595 (3rd Cir. 1978), and thus privileged under the Speech or Debate Clause. The government may be present and may contest any claims of privilege in an *in camera* hearing.[2] Despite the government's past record in this case the court expects that it will maintain the confidentiality necessary to an *in camera* proceeding.

■■ Representative Kelly has also requested a protective order limiting the scope of any testimony by Mr. Cardin to matters outside the legislative area. Motion to Quash (II) at 6. Under certain circumstances, a court can examine the expected testimony of a witness to determine if it relates to material protected by the Speech or Debate Clause. *See United States v. Eilberg*, 465 F.Supp. 1080 (E.D.Pa. 1979). But at present this court lacks the information necessary to construct an appropriate protective order. *Compare id.* (district court had grand jury testimony of witness and memoranda prepared by government indicating "substance" of expected testimony). Before Mr. Cardin is questioned, the government should examine the non-legislative documentary material it has acquired and summarize the areas likely to be touched upon during Mr. Cardin's testimony. After *in camera* inspection of this summary and consideration of Representative Kelly's arguments, a protective order can be framed.[3]

■ Congressman Kelly has moved for the production of any written or recorded statements made by him and collected during the ABSCAM investigation. The motion rests primarily on Fed.R.Crim.P. 16(a)(1)(A) and the due process clause of the fifth amendment of the United States Constitution. Rule 16(a)(1)(A) applies only to defendants; it governs discovery of evidence after the return of an indictment; it is available to Congressman Kelly only if he should be indicted by a grand jury. This

**2.** The Speech or Debate Clause does not protect the confidentiality of material. *In re Grand Jury Investigations*, 587 F.2d at 597. There is therefore little reason to exclude the government. However, testimony by the Congressman or his representatives required to vindicate what the Congressman believes to be a valid constitutional right may not be used against the Congressman in any subsequent prosecution. *Id.* (*citing Simmons v. United States*, 390 U.S. 377, 393–94, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968); *United States v. Inmon*, 568 F.2d 326, 332–33 (3rd Cir. 1977)).

**3.** Congressman Kelly also opposes the subpoena on first amendment grounds. He claims that certain material (presumably his guest book, telephone message book, diary, daily schedule, and travel records) records his contacts with his constituents, and that the production of this material will have a "chilling effect on the right of [his] constituents and others to assemble and petition Congress in general and [himself] in particular." Motion to Quash (II) at 8. Assuming, *arguendo*, that Congressman Kelly can assert the first amend-

ment interests of his constituents, his claim falls short of the mark. The Supreme Court has acknowledged that disclosure of material, to the government or public, may threaten first amendment interests and fail to meet the exacting scrutiny demanded in such situations. *See e. g. NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). But these cases involved circumstances where there was convincing proof, *id.* at 462, 78 S.Ct. at 1171–1172, or at minimum a "reasonable probability," *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 74, 94 S.Ct. 1494, 1524, 39 L.Ed.2d 812 (1976), that disclosure would deter first amendment activity. No such showing has been made in this case; Congressman Kelly's subjective allegations are not sufficient. *See Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 2324, 33 L.Ed.2d 154 (1972). The adverse effect of disclosure is particularly diminished in the context of a grand jury investigation, with the protection afforded by Fed.R.Crim.P. 6(e) and the traditional practice of grand jury secrecy.

court is also convinced that the due process clause does not provide a constitutional basis for pre-indictment discovery. The widespread disclosure of ABSCAM raises serious questions about prosecutorial misconduct. It subjects Congressman Kelly to opprobrium for conduct not yet condemned in the courtroom. But the Congressman has available adequate remedies at the post-indictment stage to safeguard his right to a fair trial. Established and frequently used procedures provide various means of neutralizing the damaging effects of undue publicity, *e. g.*, change of venue, appropriate continuances, effective use of the *voir dire* process in jury selection. The "duty under the due process clause to insure that 'criminal trials are fair,'" *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977) (*quoting Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)), can be accomplished without resorting to pre-indictment discovery procedures likely to result in more damaging publicity. It is therefore,

ORDERED, that Intervenor's Motion to Quash be denied, and it is

FURTHER ORDERED, that compliance with the subpoena be in accordance with the procedures set out in this memorandum and order.