**AUSTRALIA/EASTERN U.S.A. SHIPPING CONFERENCE, et al., Petitioners,**

v.

**UNITED STATES of America, et al., Respondents.**

**Civ. A. No. 80–1830.**

United States District Court, District of Columbia.

April 19, 1982.

Stanley O. Sher, Marc J. Fink, Frank E. Massengale, Jr., Billig, Sher & Jones, Washington, D. C., for petitioners.

Roger W. Fones, Catherine B. Klion, Elliott M. Seiden, James R. Weiss, U. S. Dept. of Justice, Washington, D. C., for respondents.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

The government seeks reconsideration of the Memorandum Opinion of December 23, 1981 insofar as it quashed certain paragraphs of the Civil Investigative Demands (CIDs) on *Noerr-Pennington* grounds. *Noerr* and its progeny essentially hold that an antitrust violation cannot be predicated upon efforts to influence government to pass or enforce laws, to influence administrative agencies to take certain actions, or upon action in the courts. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). There is a "sham" exception to the doctrine, first noted in the *Noerr* case itself, and some courts have fashioned an exception for approaches to government acting in a commercial, rather than policy-making, capacity. See Memorandum Opinion at 25–26. Also, evidence of *Noerr* conduct may be introduced at trial, at the discretion of the trial judge, to show the purpose and character of other conduct. *Pennington*, 381 U.S. at 670 n.3, 85 S.Ct. at 1593 n.3. The government originally argued that it had a right to investigate the seemingly *Noerr*-protected activities of petitioners related to agreements with foreign administrative agencies; protests filed at the Interstate Commerce Commission (ICC) or the Federal Maritime Commission (FMC); contacts with an FMC Commissioner on a particular issue; a certain FMC case; and the dissolution of one FMC Agreement and the creation of another, which events were related to an FMC case where an agreement with a foreign governmental agency to limit competition was alleged, in order to determine whether an exception to the *Noerr* doctrine applied, and for possible introduction as evidence related to an antitrust conspiracy. This Court held that while investigation of *Noerr* conduct was not absolutely proscribed, because of its general exemption from the operation of the antitrust laws or for any other reason, that the first amendment values inherent in *Noerr*-protected activities demanded that the chilling effect of forced disclosure be balanced against the governmental interest in acquiring the information. With no indication in the record as to how the protected activities sought to be investigated might fall under an exception to the *Noerr* doctrine, or as to how the information sought could be relevant in the proof of antitrust violations, and therefore an apparently weak governmental interest, the balance tipped in favor of first amendment protection and the CIDs were modified to delete those inquiries.

Reconsideration is sought primarily on the basis of a recently decided Fourth Circuit case, *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50 (4th Cir. 1981). The government also argues that if the chilling effect

of *Noerr* disclosure is to be considered at all, an actual, rather than assumed, chilling effect is required to quash governmental inquiry, and that constitutional values are not implicated in approaches to foreign governmental entities.

*Carolina Power* is an interlocutory appeal of a district court order barring discovery of *Noerr*-protected conduct based upon the chilling effect of disclosure on first amendment activities. The Fourth Circuit reversed, holding that the *Noerr-Pennington* exemption to antitrust liability does not extend to discovery of evidence, and that assuming the requests met the relevance standards of Rule 26 of the Federal Rules of Civil Procedure, the trial court did not have discretion to limit discovery. The *Carolina Power* court pointed to the *Pennington* case, where evidence of *Noerr* conduct had been introduced before the jury. The Supreme Court held that the trial court should have instructed the jury that the legislative petitioning about which they had heard evidence was not illegal. The Court did not say that the evidence should not have been introduced at all, and in a footnote stated that the trial judge could admit the evidence, if deemed probative and not unduly prejudicial, to show the purpose and character of the transactions under scrutiny. *Pennington*, 381 U.S. at 670, n.3, 85 S.Ct. at 1593, n.3. "If the evidence is arguably admissible," reasoned the Fourth Circuit, "it should be discoverable." *Carolina Power*, at 53. The "chilling effect" argument was dismissed with a brief reference to *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), stating, "[i]f discovery into the internal affairs of a news organization does not have a chilling effect, then neither would discovery in this case." *Carolina Power*, at 53.

While the decision in the *Carolina Power* case rests on its unique facts, and we cannot dispute its outcome, we cannot read the case as the government does, to stand for the proposition that the harm to first amendment values attendant upon forced disclosure of *Noerr*-protected conduct should not be weighed against the interests favoring disclosure.

There is a long history of precedent dealing with forced disclosure of activities and associations protected by the first amendment. In all of those cases, the harm to first amendment values attendant upon disclosure was balanced against the governmental, or in the case of civil discovery, private, need for the information. *NAACP v. State of Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). (Chilling effect of disclosure of NAACP membership lists to the State forbids such disclosure where no compelling state interest shown). *Barenblatt v. U. S.*, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959). (Balance struck in favor of governmental interest in disclosure of Communist Party membership to congressional committee because of the implications for national self-preservation of a party dedicated to the forceful overthrow of the government). *Talley v. California*, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960). (Ordinance requiring names and addresses of circulators of handbills to be printed thereon unconstitutional where not directed at any legitimate state interest). *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). (Chilling effect of required teacher disclosure to board of education of all organizational associations for the past five years outweighs any legitimate state interest in the information). *Bates v. City of Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). (Compelling state interest to justify chilling effect of disclosure of NAACP membership list not shown). *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). (Substantial relation between the information sought and a subject of overriding and compelling state interest necessary to justify disclosure of NAACP membership lists). *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). (Disclosure of names of political contributors justified in light of strong state interests in integrity of electoral process, enforcing federal election laws, and in avoiding corruption and the appearance of corruption in federal office holding. Yet, a showing of a reasonable probability

that disclosure would lead to harassment would justify exempting a minor party from the requirements). *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). (Discovery into editorial process, though impinging on first amendment values, justified in light of strong need of public figure libel plaintiff). *SEC v. Wall Street Transcript Corporation,* 422 F.2d 1371 (2d Cir.), *cert. denied,* 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970). (Investigation of possibly bona fide newspaper does not create sufficient chilling effect to require court determination of coverage by statute prior to agency investigation). *Community-Service Broadcasting of Mid-America, Inc. v. FCC,* 593 F.2d 1102 (D.C. Cir.1978). (Requirement that government-funded non-commercial radio stations tape record all public affairs programs and make the recordings available to FCC Commissioners invalid because likely to chill free expression and no legitimate government interest is truly being served). *Federal Election Commission v. Machinists Non-Partisan Political League,* 655 F.2d 380 (D.C.Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981). (Constitutional significance of investigation focusing on association for political purposes requires strict scrutiny of agency jurisdiction to conduct the investigation). *Local 1814, Intn'l Longshoremen's Assoc. AFL–CIO v. Waterfront Com'n of New York Harbor,* 667 F.2d 267 (2d Cir. 1981). (Subpoena seeking names of union members who contributed to political action committee modified after balancing first amendment chill against state interest). *Black Panther Party v. Smith,* 661 F.2d 1243 (D.C.Cir.1981). (First amendment claim regarding civil discovery of names of members of Black Panther Party should be balanced against the need for the information sought). *In Re Possible Violations of 18 U.S.C. §§ 201, 371,* 491 F.Supp. 211 (D.D.C.1980). (Congressman's objection to grand jury subpoena of materials that record his contacts with his constituents not sufficient to prohibit disclosure where there was no showing of a reasonable probability that disclosure would deter the exercise of first amendment rights, and pro-

tection is afforded by practice of grand jury secrecy).

Although disclosure in those cases was not of precisely the same type of information as is sought here, there can be little doubt that petitioning the government is equally central to first amendment values as the interests involved there. At least one court has stated with particular reference to *Noerr* conduct that admissibility of evidence should be governed by "a test that weighs the probativeness of and the plaintiff's need for the evidence against the danger that admission of the evidence will prejudice the defendant's first amendment rights." *Feminist Women's Health Center v. Mohammad,* 586 F.2d 530, 543 n.7 (5th Cir. 1978), *cert. denied sub nom. Palmer v. Feminist Women's Health Center,* 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979).

■ Although the balance has been struck differently in different situations, there is no doubt that the overwhelming weight of authority is to the effect that forced disclosure of first amendment activities creates a chilling effect which must be balanced against the interests in obtaining the information. Even in *Herbert v. Lando,* upon which the *Carolina Power* court relied, while finding the balance favored disclosure in that case, the Court made clear that the result would change where the interest in disclosure is less compelling, stating that a law that subjected the editorial process to examination merely to satisfy curiosity or to serve some general end such as the public interest would be unconstitutional.

Also particularly relevant to this case is our own Circuit's decision in *Federal Election Commission v. Machinists Non-Partisan Political League,* holding that where information about first amendment activities is sought, the usual standards applied to the enforcement of investigative subpoenas must be modified to give more protection to first amendment values. In the instant case, a showing of relevance that would have been adequate by the usual subpoena enforcement standards was found inadequate in light of first amendment consider-

ations. We conclude that the use of a balancing analysis in this case was perfectly appropriate.

■ Having decided that the first amendment chill should be balanced against the need for disclosure, the question remains as to whether the balancing was done correctly in this case. Specifically, the government contends that the petitioners' mere assertion of a chill, without a showing of concrete instances of inhibition of free exercise of first amendment rights, should not have been given any weight. The petitioners, although claiming that no such showing is necessary, have submitted an affidavit of Kenneth R. Egan, Vice President—Traffic of Columbus Line, Inc., which is a member of all three petitioners, detailing purported inhibiting effects of the issuance of the CIDs, and particularly their inquiry into governmental contacts, on petitioners' contacts and communications with governmental agencies. The government retorts that the affidavit reflects that petitioners have changed their behavior in order to avoid liability, not because of any chilling effect due to disclosure itself. Avoidance of legitimate liability, the government argues, which only a court, not the Antitrust Division, can impose, is not a cognizable chilling effect.

A factual showing of actual chilling effect is not a necessity for a decision forbidding disclosure, but certainly weighs in the balance on the side of first amendment values. It is true that some chilling effect cases, such as *NAACP v. Alabama* and *Bates v. City of Little Rock*, referred to uncontroverted showings of severe chilling effects, such as economic reprisal, loss of employment, and threats of violence. However, other cases reveal that such showings are not essential to a decision that forced disclosure is unconstitutional. In *Gibson v. Florida Legislative Investigation Committee*, in giving relief from disclosure of NAACP membership lists, the Court stated that all legitimate organizations were the beneficiaries of the protections afforded, but they were all the more essential, as there, where the persons involved espoused

unpopular beliefs, and the chilling effect was consequently more immediate and substantial. 372 U.S. at 556–57, 83 S.Ct. at 898–99. In *Talley v. California*, the Court struck down an ordinance requiring printing the names and addresses of distributors of handbills on the handbills without any showing that the plaintiff's expression was actually chilled. Likewise in *Shelton v. Tucker*, teacher disclosure of organizational affiliations to a board of education which could cancel their contracts at the end of each year at will was assumed to have a chilling effect on association, without any specific showing to that effect.

The District of Columbia Circuit has examined these Supreme Court precedents in reviewing a regulation facilitating government scrutiny of broadcasting, and concluded that where there is no concrete evidence of a chilling effect, it is for the court to evaluate the likelihood of chilling effect under the circumstances, and determine whether the risk involved is justified. Disclosure to a government agency, the FCC, which had the power to put pressure on licensees by various means, was one factor in the decision invalidating the regulation in that case. *Community-Service Broadcasting of Mid-America.* This reasoning was followed in *Local 1814, Intn'l Longshoremen's Assoc.*, where the Second Circuit assumed a chilling effect from disclosure to the Waterfront Commission of the names of contributors to the longshoremen's union's political action committee. The Commission had the power to take longshoremen off the longshoremen's register, thus causing them to lose their jobs. The court compared the power of the Commission over the economic livelihood of longshoremen to the power of the board of education over the teachers in *Shelton v. Tucker*, concluding that some chilling effect was "inevitable."

Returning to the facts of our case, the government argues that no chilling effect has been shown because disclosure is only to the Antitrust Division, which operates under the confidentiality provisions of the Antitrust Civil Process Act (ACPA), and that

disclosure of *Noerr* conduct to the Division can only harm the plaintiffs if a court later finds that the conduct is not protected by *Noerr* and is part of an antitrust conspiracy, or that although it is protected by *Noerr*, it is appropriate to admit it as evidence in an antitrust suit. Obviously, the petitioners cannot be protected from a disclosure merely because the information disclosed may become a basis of antitrust liability or be admitted as evidence in a future court action. However, first amendment analysis has always embraced a healthy scrutiny of governmental action, and protected against possible misuse of government power to take reprisals against political activity or expression. Self-censorship due to fear of possible reprisal is assumed in some circumstances. Relief from disclosure was granted in *Shelton v. Tucker* and *Community-Service Broadcasting*, and in part in the *Longshoremen's* case, simply because the board of education, the FCC and the Waterfront Commission had power over the complainants, without the slightest indication that those governmental agencies had or would misuse that power to punish political activity. Likewise here, the Antitrust Division undoubtedly has power over the petitioners, for example to conduct investigations such as this one, and to bring legal action, and the potentiality for harassment exists. This is a cognizable basis for a chilling effect even without any factual showing, and even though there is no evidence of past or present misconduct on the part of the Antitrust Division. The affidavit of Mr. Egan is some evidence that petitioners have actually been inhibited in their approaches to governmental entities, but as the government has argued, it is not possible to discern from the affidavit that the inhibition is due to fear of government reprisal for legitimate political activity rather than an effort to minimize evidence of illegal behavior. In any case, self-censorship is inherently difficult to verify objectively.

Thus some harm to first amendment values in this case can be presumed, but certainly the evidence is not particularly strong. It is the weak showing of governmental interest that tips the balance in favor of the petitioners in this case. The government did not in its earlier pleadings, and does not now, make any showing of need supportive of other than an "official curiosity" standard for subpoena enforcement. See Reply of the United States to Petitioners' Brief on the Merits at 17, 22–26. More is demanded when first amendment values are at stake. Although disclosure of *Noerr* material is neither more nor less protected in civil discovery than under the ACPA, in civil discovery the court has the benefit of a complaint alleging specific violations against which to measure the relevance of the request. If respondents were to make a showing at the investigative stage that the material sought is strongly needed to confirm or prove specific suspected violations of the antitrust laws, the balance could tip in their favor. As of yet, it appears that they are either unable or unwilling to do so.

The government argues that paragraphs of the CIDs related to interactions with foreign governmental entities should not have been quashed on a first amendment basis. Of course, the first amendment was not intended to protect the right to petition foreign governments. Nor does the corollary interest in having government receive information from citizens have application to foreign governments. The previous opinion in this case did not construct a constitutional right to petition foreign governments, but merely followed the uncontradicted statement in the record that the Justice Department applied the *Noerr-Pennington* doctrine abroad. For consistency's sake, it was applied equally to approaches to United States and foreign agencies in this case. The Justice Department now explains that although the *Noerr-Pennington* doctrine is applied in foreign contexts in some cases for non-constitutional reasons (such as protecting the competitive position of American businesses in the international arena), it is not applied across the board to all dealings with foreign governments. While the Department's explanation is belated, the Department obviously cannot be forced to apply *Noerr-Pen-*

*nington* abroad on constitutional grounds. The basis for this decision being the chill on the exercise of first amendment rights, it cannot apply in foreign contexts where the Department has not voluntarily chosen to extend *Noerr-Pennington.*

Accordingly, the Judgment in this case will be modified to enforce the relevant paragraphs, ¶¶ C.7 and C.9 of CID 3756, C.6 of No. 3757, and C.7, C.8 and C.10 of CID No. 3758.